William Lee BUTTS,
Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Secretary, Department of Offender Rehabilitation, State of Florida, Respondent-Appellee.

No. 77–3231

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

June 23, 1978.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir. 1970, 431 F.2d 409, Part I.

Samuel R. Neel, III, Tampa, Fla. (court appointed), for petitioner-appellant.

Robert L. Shevin, Atty. Gen., Tallahassee, Fla., Robert J. Landry, Asst. Atty. Gen., Tampa, Fla., for respondent-appellee.

Before GOLDBERG, AINSWORTH and HILL, Circuit Judges.

AINSWORTH, Circuit Judge:

Petitioner William Lee Butts appeals from the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition. Butts was convicted of armed robbery by a Florida state court in 1970, and remains in custody. The district court granted petitioner an evidentiary hearing regarding the asserted denial of effective assistance of counsel, and determined that defense counsel had rendered reasonably effective assistance. In addition, Butts contends that he was denied his Sixth Amendment right of confrontation when the state court allowed testimony regarding a hospital record, and admitted the record into evidence. Finally, petitioner claims that the state trial judge erred in asking several questions of one witness. The district court rejected both of these contentions, and after due consideration of all three issues, we affirm.

At the evidentiary hearing conducted by the district court, petitioner's trial counsel, John Riley, testified that after his first conference with petitioner he realized that Butts would assert an alibi defense and that Ruthie Miller and her husband Thomas Miller were potential alibi witnesses. Butts told Riley that he had been with Ruthie and Thomas Miller during the time the robbery was taking place. Riley had some difficulty locating the alibi witnesses, but eventually did contact Ruthie Miller. Thomas Miller proved more difficult to locate, as Ruthie Miller told Riley that her husband had left her house, and her endeavors to locate him had failed.

Shortly before trial Ruthie Miller informed Riley that her husband had left the country. Riley stated that it was his understanding that if Thomas Miller could have been found, he would have appeared voluntarily at trial.

Butts testified at the evidentiary hearing that he had known that Thomas Miller was staying at his mother's apartment in Clearwater, Florida, and that Riley had not consulted with him concerning the whereabouts of Thomas Miller before the day of trial.

Riley did not seek a continuance, and instead relied on the testimony of Ruthie Miller, who stated that she recollected that Butts was at her home the night of the robbery because she remembered taking her daughter to the hospital the next day, January 7, 1970. Butts also testified that he had spent the evening at the Millers' home.

578

The prosecution rebutted Ruthie Miller's corroboration of Butts' alibi through the testimony of the hospital medical records librarian. The librarian stated that she was the custodian of the records for all persons receiving treatment at the hospital. The witness then produced the hospital records which indicated that no treatment was received by Ruthie Miller or her daughter on January 7, 1970.

■ The core of petitioner's argument is that Riley should have been more diligent in attempting to find Thomas Miller. We conclude that whatever lack of diligence defense counsel may be guilty of in this case does not rise to the level of ineffective assistance of counsel. Riley inquired as to the whereabouts of Thomas Miller, and did not seek compulsory process at an early date because he reasonably believed that if Thomas Miller could be found he would come forward to testify without legal compulsion. In addition, Riley considered Thomas Miller's testimony to be cumulative, since Ruthie Miller was to testify that Butts had spent the evening with her and her husband. Ruthie Miller's incorrect recollection of the date on which she took her child to the hospital apparently was not known to defense counsel before trial, and petitioner does not argue that the failure to check the hospital records to make certain that Ruthie Miller's memory was accurate constitutes ineffective assistance. It is still unclear that Riley could have found Thomas Miller as Ruthie Miller told Riley that her husband had left the country before the time of trial. Thus, we conclude that petitioner received the " 'reasonably effective assistance' " of counsel ensured by the Constitution. *United States v. Carter,* 5 Cir., 1978, 566 F.2d 1265, 1272–73.

■ Petitioner urges that the testimony of the hospital librarian regarding the medical records of Ruthie Miller and her daughter was improper under the Florida Uniform Business Records as Evidence Act, Fla.Stat. § 92.36, and that admission of the hospital card was violative of his Sixth Amendment right to confront and cross-examine witnesses. We need not consider the application of Fla.Stat. § 92.36, as federal courts will not decide state evidentiary questions on habeas corpus review. *See Mercado v. Massey,* 5 Cir., 1976, 536 F.2d 107, 108. Petitioner's Sixth Amendment contention is equally without merit, as the medical records librarian testified that she was personally responsible for the hospital records, that the records contained the names of all the patients and the time they were admitted to the hospital, and that the records were authentic. There is no substantial evidence that this document is untrustworthy, and therefore we find no violation of the Sixth Amendment in the admission of the hospital card. *See United States v. Colyer,* 5 Cir., 1978, 571 F.2d 941, 947.

■ The final assertion is that the trial court improperly injected itself into the trial by asking several questions of Ruthie Miller regarding her use of the name Ruthie Conners on the hospital records. Petitioner has not demonstrated how such a patently innocuous practice could possibly indicate a lack of impartiality on the part of the trial judge. In *United States v. Zepeda-Santana,* 5 Cir., 1978, 569 F.2d 1386, 1389, this court stated that "[i]t is within the trial court's discretion to question witnesses as long as he remains impartial and does not exhibit prosecutorial zeal." We find no abuse of discretion in this case.

AFFIRMED.