IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-50031

_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

versus

MORRIS PROCTOR, JR.,

                                        Defendant-Appellant.


_____

Appeal from the United States District Court
for the Western District of Texas
EP-99-CR-302-ALL-P
_____
December 8, 2000

Before BARKSDALE, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Morris Proctor, Jr. (Proctor) appeals his conviction for possession with intent to distribute marijuana, alleging that his consent to search was involuntary and that the government committed a discovery violation.  Finding no reversible error, we AFFIRM.

I.   FACTUAL AND PROCEDURAL HISTORY

Proctor, a sergeant in the United States Army stationed in Georgia, stopped his vehicle at the Sierra Blanca checkpoint in the

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

early morning hours of February 22, 1999.  When the border patrol agent  began making inquiries with respect to his citizenship and identification, Proctor "started gripping" the wheel and looked forward.  The agent asked Proctor whether he "could take a look into his trunk."  When Proctor answered, "Sure, go ahead," the agent asked Proctor to drive his vehicle to the right where the secondary inspection area was located.

The agent in the secondary inspection area also asked Proctor if he could look into his trunk, and Proctor again responded, "Go ahead."  When the trunk was opened, the agent smelled a strong odor of marijuana.  The agent at the secondary checkpoint requested that the first agent retrieve his drug-sniffing canine.  The canine alerted to the trunk of the car.  Inside the trunk, the agent saw two suitcases; one suitcase had an identification tag with Proctor's name on it.  The border patrol agent discovered approximately 70 pounds of marijuana in the two suitcases.

Prior to trial, Proctor moved to suppress the marijuana.  He argued that he was unlawfully detained at the secondary inspection point and that the agent searched the trunk without his voluntary consent.  Proctor argued that he merely acquiesced to the border patrol agent's claim of authority.  Proctor argued that the opening of the trunk, the canine inspection, and the search of the luggage were products of an illegal detention.  He argued that the evidence discovered in the search should be suppressed.

Following an evidentiary hearing on the motion to suppress,

the district court denied the motion. The district court determined that the referral to the secondary inspection point was authorized and was not without justification based on Proctor's nervous behavior. The district court also found that Proctor consented to go to the secondary checkpoint. The district court determined that Proctor cooperated with the agents and consented to open his trunk for inspection. The district court rejected Proctor's argument that he acquiesced to the agents' show of authority.

A jury convicted Proctor on one count of possession with intent to distribute marijuana. The district court sentenced Proctor to 27 months' imprisonment and two years' supervised release and ordered him to pay a $1,000 fine and a $100 assessment. Proctor now appeals to this Court.

II. ANALYSIS

A. Voluntary Consent

Proctor contends that he did not consent voluntarily to the search of the trunk of his vehicle; he asserts that he acquiesced in the border patrol agents' show of authority. He contends that he was detained involuntarily at the checkpoint and the agents used an element of coercion, *i.e.*, "a show of lawful authority," to secure consent to open the trunk. Proctor asserts that the traffic signs leading to the checkpoint, the flashing lights, the traffic cones, and the uniformed officers caused him to believe that the

3

officers were "entitled to search." He adds that the border patrol agents did not inform him that he could refuse their requests to search. Proctor contends that his cooperation resulted from the agents' show of authority and that his military background contributed to his characterization of the agents' requests to search as "affirmative assertions of lawful authority." He asserts that because he did not voluntarily consent to the search, the marijuana found in the trunk should have been suppressed.

"Border patrol agents may briefly detain motorists at permanent immigration checkpoints to question them about their citizenship . . . [and] may refer motorists to the secondary inspection area with any 'particularized reason.'" *United States v. Gonzalez-Basulto,* 898 F.2d 1011, 1012 (5th Cir. 1990)(citations omitted). The agents' referral of Proctor to the secondary inspection area did not violate his constitutional rights. *See id.*

The voluntariness of consent to a search is a question of fact that is determined by an examination of the "totality of the circumstances." *Id.* at 1012-13. The government has the burden of proving that consent was given freely and voluntarily. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045 (1973). Consent is not given voluntarily if it was "coerced by threat or force, or granted only in submission to a claim of lawful authority." *Id.* at 233, 93 S.Ct. at 2051.

The district court considers six factors in evaluating the

voluntariness of consent: (1) the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *See Gonzalez-Basulto,* 898 F.2d at 1013. This Court cannot overturn the district court's finding that consent was voluntarily obtained unless the finding is clearly erroneous. *See id.* When a district judge's finding of consent is based on oral testimony at a suppression hearing, the clear error standard of review of factual findings "is particularly strong since the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Gonzales,* 79 F.3d 413, 421 (5th Cir. 1996)(citation and internal quotations omitted).

The district court evaluated the above-mentioned factors before it denied Proctor's motion to suppress. The district court found that the agents did not brandish weapons or threaten Proctor. Proctor testified that he cooperated with the agents by agreeing to open the trunk. The district court found no evidence that the agents "put any pressure" on Proctor to open the trunk. The district court found no evidence that Proctor was of substandard intelligence and noted that Proctor's demeanor at the hearing suggested otherwise.

We have rejected a very similar claim. In *Gonzalez-Basulto,*

5

border patrol agents stopped a motorist at the Sierra Blanca checkpoint and inquired regarding his citizenship; the motorist responded nervously, and the agents referred him to the secondary inspection area. *See* 898 F.2d at 1012. The agent asked whether the motorist would mind opening the trailer for an inspection and the motorist said, "No problem." *Id.* A dog alerted on a row of boxes in the trailer. *See id.* When the agents opened the boxes, they discovered cocaine. *See id.*

This Court rejected the appellant's argument in *Gonzalez-Basulto* that his consent was not given voluntarily. *See id.* at 1013. We found that the agents did not threaten or pressure the appellant to submit; the appellant cooperated with the agents; and the appellant, although not well-educated, sufficiently understood the circumstances. *See id.* We expressly noted that the agents did not inform the appellant that he could refuse consent. *See id.* Nevertheless, under the totality of the circumstances, this Court affirmed the district court's finding that the appellant had consented to the search. *See id.*

In the instant case, as the district court recognized, the facts of Proctor's case are practically identical to those in *Gonzalez-Basulto*. Proctor testified that the agent said, "Can you open the trunk," and he complied. The agent testified that he did not threaten, restrain, or touch Proctor and that he did not display a weapon. The agent testified that Proctor twice consented

to open the trunk when the agents asked for such consent.  Proctor has not shown that the district court's finding that he voluntarily consented to a search of the trunk was clearly erroneous.[1]

B.    Discovery Violation

The day before Proctor's trial began, a border patrol agent who had questioned Proctor at the checkpoint informed the prosecutor that Proctor had admitted ownership of the suitcases in the trunk.  It is undisputed that the government did not disclose this statement prior to trial and that Proctor had not made a request for such evidence.  Neither is it disputed that, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, the court's general order of discovery directed the government to permit the defendant to inspect and copy or photograph:

> The substance of any oral statement which the Government intends to offer in evidence at the trial made by the Defendant whether before or after arrest in response to interrogation by any person then known to the Defendant to be a Government agency.

Relying on the district court's general order of discovery, Proctor argues that, in light of the prosecutor's failure to disclose the evidence, the district court erred in allowing the prosecutor to elicit the testimony. We will assume solely for purposes of this appeal that, pursuant to the district court's discovery order, the prosecutor should have disclosed the statement prior to trial.

---

[1]    *See also United States v. Olivier-Becerril*, 861 F.2d 424, 425-26 (5th Cir. 1988)(affirming denial of motion to suppress on similar facts).

Nonetheless, because any error was harmless, Proctor is not entitled to any relief.

We may reverse Proctor's conviction only upon "a showing that the error was prejudicial to the substantial rights of the defendant." *United States v. Arcentales,* 532 F.2d 1046, 1050 (5th Cir. 1976). Proctor has failed to make such a showing.

Proctor contends that the admission of this statement, without prior notice, deprived him of the opportunity to investigate the circumstances under which the statement was made, preempted any attempt to suppress the statement, prejudiced his defense, and prevented him from designing an intelligent defense strategy. Further, Proctor asserts that the surprise admission of his statement derailed his defense strategy midway through trial in that his defense focused on the theory that he did not know that marijuana was in the suitcases and that he did not own the luggage. He claims that his defense strategy "undoubtedly would have been different if counsel had known of Proctor's purported statement claiming ownership of the bags[.]"

We are not persuaded that Proctor has shown his substantial rights were prejudiced. His contentions with respect to a different strategy are all speculative in that he has not shown how he would have changed his strategy.

More importantly, in light of the other evidence at trial, Proctor cannot show that this evidence violated his substantial rights. Proctor's friend, Gerald Bryant, purchased a one-way plane ticket for

8

Proctor from Georgia to El Paso, Texas. Bryant and Proctor flew together to El Paso but Proctor claimed to have no idea where Bryant went after they left the airport. Prior to leaving the airport, Bryant rented one vehicle for Proctor and one vehicle for himself. After spending only a few hours in El Paso, Proctor began to drive his one-way rental car back to Georgia.

Upon questioning at the checkpoint, Proctor informed the border patrol agents that the purpose for his trip to El Paso was shopping. Proctor later changed his story and claimed he had flown to El Paso because he was interested in finding a position as an instructor at Fort Bliss. Proctor was the sole occupant of the car, and the brown suitcase containing marijuana had an airline identification tag attached to it bearing Proctor's name. After the marijuana was discovered, Proctor quickly volunteered to the agents that he may have been "set up."

Accordingly, because there was other evidence indicating Proctor's ownership of the suitcases and the evidence of his guilt was overwhelming, Proctor has not shown that his substantial rights were prejudiced. The judgment of the district court is AFFIRMED.